Judge Moore has turned the floor over to me because I have to make a motion. In fact, I'm privileged to make a motion today. I am moving the admission of my law clerk, Stephen Elkin. He's a member of the Bar in good standing with the highest court of New York. I have intimate knowledge of his credentials because he's been working for me for almost a year now, and I have known him for quite a while before that. Stephen graduated from GW here in D.C. with a B.A. and a B.S. in chemistry, right? And then went to Berkeley where he got his master's in chemistry, and then he went to NYU for law school, which is where I had the privilege to meet him. He has been working for me, and he has definitely accorded himself properly for purposes of being permitted to become a member of this Bar. And perhaps most importantly, today's a big day because it's also his 30th birthday. So might as well do everything all at once. So I move his admission. Well, I've consulted with Judge Schall, and it was a tough decision, but Judge O'Malley's very convincing, as they often are, actually. So we are happy to welcome you to the Bar, and I have no doubt after clerking for her, you'll be an excellent contribution to our Bar. So please turn and be administered the oath. Please raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. I pledge allegiance to the flag of the United States of America and to the republic for which it stands, one nation, under God, indivisible, with liberty and justice for all. Thanks. You may be seated. Welcome. Okay. Our first case for today is case number 2014-1435, Lending Tree v. Zillow. Mr. Korninski, please proceed. Good morning, Your Honor. If I may, I'd like to use 10 minutes in the opening and reserve 5 minutes for rebuttal. And again, I know this is not the way it goes, but to the extent that I can, I'd like to claim construction and section 101. With respect to claim construction, Your Honor, the first term that we'd like to address is credit data. One of the issues there was that some of the claims don't require a qualification form, and they only require credit data. The court's construction information entered on the qualification form sufficient for a which we believe is improper. Number two is that the language sufficient to extend credit was removed during prosecution, as this court had said, into electronics. Courts are not permitted to read back into claim limitations that were originally removed and were removed during prosecution. And then the third reason with respect to credit data being improper is that the specification doesn't require that credit data be sufficient for a lending institution to extend or deny a claim that doesn't appear in the specification. But isn't that the whole point of what the claims are trying to get at, is that they're saying that you need the information so that you can decide whether to extend credit? Your Honor, I think part of the process for claim construction is to provide something that the jury understands, not to prevent legalistic terms, that the jury is not comprised of lawyers. Number two, one of the things that the court did here was to take an invention, a claimed invention that was focused on applying for credit, and then turned it into an invention for closing a loan. The objectives of the invention talk specifically to a process for applying for credit. None of the claims require closing a loan. And what this does is focusing on extending credit. With respect to the positive credit decision, again, what the court did was to employ these legalistic terms, a proposal to extend credit that can be accepted by the user to create mutual assent, i.e., a contract, or depending upon what aspect of the case, a binding promise. Again, this language is not in the specification and actually contradicts the specification, which contemplates other embodiments which would have non-binding responses from the lender. We see this in Column 5, Line 67 to Column 6 of Line 2 in the 594 patent, Column 6, Lines 10 to 12 of the 532 patent, which talks about the text message decision contains a loan ID number and a request for more information from the borrower. Well, even if you didn't conclude that there had to be a binding offer and acceptance at the end of the day, isn't it clear from the spec that what you're talking about is providing sufficient information so that an actual offer that could become binding gets made? No, not necessarily, Your Honor. There are different embodiments disclosed in the specification. So a positive credit decision would be broader than, say, an offer or a binding offer in the sense that it could also be a request for information, which is a positive decision that says we still want to do business with you, but we need more information, or we may want to do business for you. The other thing, it could be a proposal or identifying interest rates, for example, but not necessarily binding. There's nothing that says that these terms are binding contractual requirements. An offer can also be, for example, a proposal of certain terms that you may qualify for. So are you distinguishing between a concept of an offer and the concept of a positive credit decision? Initially, yes, Your Honor. A positive credit decision, I think, would be broader than an offer because a positive credit decision could be an offer, a proposal that's not binding or a binding offer. It could be a request for additional information. So you're saying that a positive credit decision doesn't necessarily have to be based on a positive credit decision? It needs to be based on credit data, Your Honor. But then trying to say sufficient information, well, sufficient information may be different for one lending institution versus another. But all lending institutions need some basic information, do they not? That is correct, Your Honor. And wouldn't that include a social security number? No, it would not, Your Honor, not necessarily. So I think that goes to the heart of the claim construction dispute in this case because the way these claims were argued at trial was that the credit data that is transferred to the lender must be, or is required to be, to include social security, social security number. But what we see, for example, in Stage 10, it says that the social security number, at is not obtained until Stage 9. We see that in two places in the specification. And why would that be? Well, a lot of borrowers don't want to provide certain private information until later in the process after they get the acceptance of, after they accept, for example, a proposed interest rate. So moving to offer, again, same issues, same objections that we had with respect to positive credit decisions we have with respect to the term offer. The offer could, you know, propose loan terms to which the user may qualify. But the biggest problem that we had with the term offer, Your Honor, is that the term offer was imported into all of the whereby clauses in all of the claims. However, the term offer only appears in Claim 1 of the, I think, 594 patent. It doesn't appear in all the other whereby clauses. The whereby clauses, other than the one claim, merely require competition. But by putting this offer term in, again, it overly limits the claim. What we know from the testimony from Zillow's own witnesses is that competition could be more than a binding offer. Competition can be shown by proposing interest rates. It could be by submitting reviews from the industry about your loans. It could also be advertisements. So are you saying that the reference to an offer and what that means would mean that the construction was appropriate for Claim 1 but not for the others? No, Your Honor. I guess what I'm saying for the whereby clause, the term offer should not have been imported into all the claims but the one. OK, you want to turn to 101? Yes, Your Honor. So with respect to Section 101, obviously, we would ask that the court affirm the district court's decision with respect to finding that the patent claims are patent eligible. How can we affirm that decision when we don't even know what it was based on? There was just a one-line statement, right? There were no factual findings by the district court, Your Honor, but I guess- Or any analysis of any kind of the issue. That is correct, Your Honor. So let's go through that. What we've done is we've looked at the cases. We followed the lead from the Federal Circuit, which looks at these business method patents on a case-by-case basis. What the lending treat claims present is an inventive application of simultaneous competition by lenders, which is new in the art of credit financing, just as a continuous monitoring of temperature is new in the art to Deere. Which exact claims are at issue here? Because it looks like before the district court, there were certain claims that were at issue and that there are other claims that appear to be at issue, different claims appear to be at issue here on appeal. What do you understand the claims to be at issue? Claims one, five, nine. Claims one of the five, nine, four. I'm sorry, what claims now? Claims one of the five, nine, four patent. And claims six. And claims one and 22. What about claims six of the five, nine, four? It's in the red brief on page 11. Let's look on page 11 of the red brief. Well, that's what my question is. The red brief lists different ones than were at issue below. So page 11 of the red brief says claims one and six of the five, nine, four. And that's what it asks us to look at with regard to the 101 issue. Below, before the district court, the summary judgment regarding the five, nine, four patent asserted summary judgment entitlement on 101 for claims one, two, three, one, two, and three. And six through 14 of the five, nine, four patent. So I think part of Judge O'Malley's question likely is the claims upon which you move for summary, or upon which the other side move for summary judgment below, seem to be a larger set than the claims that are being appealed in the red brief.  They can decide to winnow down the issues and maybe only appeal the denial of summary judgment with regard to some claims. But the bigger issue I have is for the 816 patent in particular, they move for summary judgment below for one, two, four to seven, nine, 11, 22, and 23, full stop. On appeal, they're asking us to reverse the district court's judgment, which includes a number of claims, including claim 24, upon which they never move for summary judgment below. So this is not something that you raised, but it is a point of concern for the court. How do we deal with the red brief's assertion that it's seeking to overturn a judgment, among other things, with regard to a claim that it never moved for judgment on below? Your Honor, we would submit that they didn't properly move to reverse all of those claims that were addressed below. I think one of the issues may be that when we went to trial, we narrowed the scope of claims that were being addressed at trial. And so maybe when the conversion came up here- When did claim 24 pop in? Because 24 of 816, in general, they move for summary judgment of a much larger swath of claims than they're now appealing. So that makes sense, giving your winnowing down of claims. And that's what should happen in a district court litigation. But suddenly, they're asking us to reverse the district court's judgment regarding claim 24, but I don't see any judgment regarding 24 because that wasn't part of the motion. Is that a claim you added at some point during the process below? Go ahead. That claim was added at trial. Added at trial. And the district court approved the addition of that claim? Correct. Okay. Well, we'll ask the other side this, but- Sure. I realize I'm getting into my rebuttal. I guess let me spend a couple minutes just to- Well, I guess my question is, at minimum, shouldn't we vacate and remand for the trial court to explain why it thinks this claim is patent eligible? I think the court has that option of doing that. I think the other issue is, should the claim construction change? I guess, theoretically, that could also change, I suppose, the section 101 analysis. But by the same token- How do you believe the claim construction affects the section 101 analysis? Frankly, I actually don't, Ron. I'm just saying that it's a possibility. I think my position would be that the key issue that helps us to overcome the patent eligibility is the fact that when you look at the claim as a whole, whether it's the way the court construed it now or the way we're proposing that the Federal Circuit construe it, when you look at the claim as a whole, what we have is an inventive application that provides a way to apply for credit. I understand. So Alice gives me this two-part test, which I have to adhere to. And step one is, are these claims directed to an abstract idea? That isn't the part that involves the inventive component. So are you conceding that the claims are directed to an abstract idea? No, Your Honor. Then how are they not? OK. Lendon Tree's position is that we satisfy step one and step two. The problem we have with step one is when you look at the Supreme Court cases, Mayo, Alice, for example, they don't provide any guidance on how we should go forward and prove that it's not an abstract idea. The idea is we're trying to prove a negative. But if you look at Deere, Deere says that you can take these concepts that may in and of themselves be not patent eligible, but you can still patent claims that use those if you're providing some new inventive. Well, that's step two. Yeah, that would be step two. But the problem we have with step one, going back to Judge Moore's question, is all we have is the district court's decision that says it's patent eligible. We only have, I think there are two potential arguments that were made by Zillow as to what was the abstract idea. I think one of them was a clearinghouse, which was certainly much more than that. And the other one, I think... Well, how? How are you much more than a credit application clearinghouse? Your Honor, if you look at, I think it's mortgage grader. What that is, it's a deposit of potential loan terms that are deposited into a database, and the borrower goes through that and looks for maybe loan terms that they might be interested in. What we have here is a very specific situation where a borrower submits information to a number of lenders. Those lenders respond specifically back to that borrower, based upon that borrower's specific information, and it's done simultaneously, so that's forcing competition. So what this invention did is... So you just have a credit application clearinghouse that is competitive. I'm having a lot of difficulty seeing how these claims survive, Alice, step one. Your time's almost up, so if you think you have a better argument on step two, you might want to turn to that. Okay, so on step two, Your Honor, if you look at Deere, what you have in that particular situation was the application of a mathematical formula, the Arrhenius formula, that was applied to curing rubber. And what the court said in a buy safe was that the only new inventive application in the Deere patent invention was this use of this timing element, this continuously monitoring the temperature. So it's our position, Your Honor, that the simultaneous competition that's created in the LendingTree claims are no less abstract than the monitoring of temperature that exists in Deere. Okay. Can I ask you just one real quick question? This came up in your colleague with Judge O'Malley. Are you saying that we can decide the 101 issue? You don't, you're not urging us to send it back. You're saying we can decide by saying the judge got it right or got it wrong? Personally, I believe that the court can. Okay. That's all I want to know.  Okay. Mr., is it Hayden? Hadden. Hadden. Mr. Hadden, please proceed. Can you just start with this, the difference in the claims issue? Yeah. Because, you know, then, so if you're wrong and we don't have the ability to address all the claims, then even if we were to agree with you on 101, we got to go through all the other issues because you got this one claim that wasn't part of your summary judgment below. So there was never a decision by the district court on that claim for us to possibly review an appeal. So my understanding, Your Honor, is that as was explained, there was a larger set of claims that were at issue at the time of the original summary judgment motion that we filed and then was renewed again. It was renewed again when? Before trial. But then it was renewed a third time after trial. The summary judgment with regard to 101 was renewed after trial? Yes, Your Honor. And so? So my, just to cut to the chase, I think what happened was we originally included the cutback, but then there was an additional claim added. The problem is, so what do I do with the additional claim? That's the only one I'm worried about. I don't care about you winnowing the claims down. What I care about is you suddenly asking me on appeal to decide as an appeal an issue that wasn't part of the primary. Sure. So my understanding was that in the post-trial renewal at J-Mall of the 101 issue, that the court finally decided, which made this an appealable judgment, that included all of the claims. But where can you show us the, you list the claims as Judge Moore pointed out on page 11, okay? Yes, Your Honor. And you're saying these are the claims with respect to which you're asking us to rule on 101 grounds, correct? Yes, Your Honor. Okay, now, where in the record can we go to see, to really answer the question that Judge Moore raised, namely, are all these claims properly before us? Specifically, Claim 24. Just show us now where we can go in the record to have verification on Claim 24. I'm sure that's right at your fingertips, but I don't, what page of the appendix? The renewal of our motion for some of the judgment. Why don't you go on with your argument, ask your co-counsel to find it while you're standing here, and we can see if we can resolve it before the end of oral argument. Is that okay, Judge Shaw? Yeah, oh no, definitely. I don't want to burn up all this time. Thank you, appreciate that. Going to the 101 issue first. I don't think, I think Judge Moore is right. These claims are directed at the abstract idea of a clearinghouse for online loan applications. And for 101 purposes, these patents are indistinguishable from the patents that this court held invalid in Mortgage Grader and Dealer Track. In both those cases, like this patent, a user or auto dealer, in the case of Dealer Track, submits a loan application to a clearinghouse. That loan application is selectively forwarded to a lender. A lender responds with a response, an offer. We don't know whether the trial court found this claim eligible under step one or step two, do we? No. So all we know as far as the trial court's reasoning, and it was expressed both in open court and also in a footnote in the JMAL motion, was that the court believed that because it had construed the claims narrowly to require an actual offer that could be accepted to form a contract, the patents were not abstract. But it did say if the claims were construed more broadly to cover this sort of lead generation idea that LendingTree was proposing a trial that would cover any communications between a borrower and a lender, the claims would likely be invalid. Well, then that sounds like he went, he was focusing on step one. I believe so, Your Honor. So do you agree that there's a distinction between providing enough information to form a contract between a lender and a borrower and just providing data to create the competition? I don't believe that that is a proper distinction for one-on-one purposes. I believe that the claims do require sufficient information for a lender to make a decision. That's clear from the patent itself, which is about a universal loan application. And if you look in figure 10 in the patent, it's actually a flow chart. And there is only two options that a lender has when it receives an application. Can accept it or deny it. There's no request for additional information, as LendingTree's counsel said. So this is really about applying for a loan online, and that's what it's about. You accept the offer, you close the loan, that's what happens. But whether or not that saves it from one-on-one, I don't think so, Your Honor. I think whether it's a loan application or something less that is received by the borrower, this is still just economic activity performed using generic computers. Do you agree with your friend on the other side that whatever you describe this economic activity to be, that there's more detail to it than there was in mortgage-grade? I don't believe there's more detail. Certainly not than dealer track. Dealer track has a much more detailed description of the technology involved, far more flow charts. But the basic concepts are the same in all of them. In all of them, there is some matching of an application against some loan criteria. Actually, LendingTree slightly mischaracterizes mortgage grader. Mortgage grader does have a database that stores the lending packages from lenders and the applications. But it also includes a program that compares those and provides selected loan packages to borrowers. It actually describes it as in a spreadsheet-type form. So the borrowers can choose among these competing loan packages that meet their criteria. So in that sense, it has exactly the same type of simultaneous competition that LendingTree is relying on in these patents. When you talk about what, whenever you talk about step one, I mean, one of the things that people focus on is whether or not what is claimed could be done manually. Sure. And this is essentially what mortgage brokers have done for years, right? Mortgage brokers accept loan applications from borrowers. They match them against the requirements they have from multiple lenders. They forward the applications to the lenders that have matching requirements. They get an answer back from the lender. And they provide it to the user. But is there a distinction? Or is there something new or novel about being able to avoid the mortgage broker? Well, it's just computerizing activities that were performed by people before. But the court has said over and over again, that's not patent law. That's just an economic arrangement automated using computers. That's the same thing that's going on at DealerTree. So really, I don't see any wiggle room between MortgageGrader and DealerTrack in this patent under 101. Ted, just to assist your search, and I'll let you go on. Sure. 2007 of the joint appendix has the motion for summary judgment invalidity under 101. And various claims are listed there. That's the motion at 2007. OK. Thank you, Your Honor. I didn't want to interrupt you. But I thought that might help the search. But was the renewal post-trial, was that done orally or in writing? That's a good question. Both, Your Honor. OK. And then, but in writing, does it mention Claim 24? That's what I'm trying to find out. OK. And the renewal you're talking about post-trial, so this is just summary judgment. You're telling me you move for JMAL at the close of evidence on the 101 issue? Yes. Yeah, because you can't renew a summary judgment. Obviously. You can only file a Rule 50 and then renew a Rule 50. Summary judgment becomes irrelevant. Right. The issue we had at the end was we never had a ruling on 101 that we could, so that this was a final judgment to appeal. You didn't have a ruling because you won on the inventorship issue. And the judge just never ruled. He just never ruled on your summary judgment. Correct. On your summary judgment? Or on your, no, I thought he denied your summary judgment. Did he renew? She's clarifying. It was the renewed JMAL, which is the final thing that he denied, that allowed this appeal to happen. And that covered all the claims. Yeah, so he just sat on the summary judgment and went to trial. But he effectively denied it by never ruling on it. Right. OK. And so the renewed JMAL, though, it is your understanding that it included all of the claims that were at issue at trial? Yes, Your Honor. Yeah. All right. Very good. This is at 11,346 where he ruled. And he said, based on the court's claim construction, the court does not need to address whether the patents in suit are invalid under 101 if the court had adopted plaintiff's claim construction. It's confusing. OK. Very good. All right. OK, do you have anything further? Just on the, if there's issues on the claim construction, the court, I think, read the patent properly. That the form that is received by the system from the borrower includes the social security number. It includes all the information required to make a decision.  The lender tree is just misreading the patent. It's very clear. Figure 3B says the system checks the format in which the social security number was entered on the application before it forwards it to the lender. So there is no argument that there are alternative embodiments where less information is either received or forwarded to the lender. It's just false. There's only sort of one embodiment in this patent, and it's described in the figures in the specification. And in it, there is an application that includes the user's social security number. There's a system in figure 3B that checks the format and matches with the lender's and forwards the entire application to the lender. In fact, it appeared in their reply brief, the lender tree has dropped this whole argument and acknowledged that in the preferred embodiment, the social security number was included as part of the application. And it's clear from figure 3B. Beyond that, your honor, I really don't see how this patent gets saved under 101. There's no new technology. The computer system that is described in the specification is nearly identical to the figures in the dealer track and mortgage grader patents. There's a central computer with a database. It connects over the internet to borrower computers where borrowers can fill out forms, and it connects to lender computers where it can receive loan information from lenders. Nearly the identical diagram or its equivalent is in both the dealer track and the mortgage grader patents. Does Zillow have a patent on its system? Not on this aspect of the system. I don't know all of Zillow's patents, but they weren't an issue in this case. The Zillow system provides just anonymous rate quote information. It's generated by what's called a rate engine. It's kind of a real-time program that feeds off the market rates. Okay, Mr. Haddon, thank you very much. Thank you. Your Honor, I know I used up my time. I know you have... Doesn't he have a minute left or so? Okay, you have time left. I guess going back to Section 101, Your Honor, we had a six-week trial, and at that trial, Zillow had raised a number of Section 102 and 103 defenses in order to invalidate the patent, and a jury came back and found that all of the claims were not invalid, which supports the finding that this is a new inventive application. The argument that this can be done by brokers was presented at trial, and it was rejected because a broker is hired by banks, and one of the things that there's plenty of testimony on was trying to change the leverage from the banks. If you try to take a loan or force banks to compete simultaneously, what you do is you're filing applications. You're waiting for them to come back. They may or may not come back. They may reject you outright. But right here, the mortgage broker, again, is hired by specific banks, and they're pushing specific banks, and so it's not the same as the system that you have here. So you're saying it takes out any human bias? That's correct, Your Honor. And that changes it from being an abstract idea? No, I'm not saying that that's what changes it from being... Or that's the novelty? What I'm saying is when you put it together, you're using technology where you have multiple computers. You're doing something very specific where you're creating a new change or a new reaction  LendingTree, the company, experienced significant commercial success and very rapid rise. And then you had all these awards that were granted from the industry for the patented technology. And then you had all of these copycat companies spring up, which didn't exist prior to LendingTree. They were the first because this was something new. And I don't know if it's the right term, secondary indicia, patent eligibility. But when you look at situations on a case-by-case basis, that evidence, which is in the record, supports the fact that this is something... It's a new, inventive application. I'm sorry. With respect to mortgage grader and dealer track, the LendingTree claims don't somehow preempt what they're doing there. Zillow argued that somehow that shows some simultaneous competition. It doesn't. What it shows is maybe the borrower can submit... Do you agree that in the absence of simultaneous competition... I'm sorry. Do you agree that in the absence of the simultaneous competition limitation that these claims would be, for purposes of 101 only, indistinguishable from dealer tracker and mortgage grader? I don't see how, absent the simultaneous competition limitation, which is the only thing I really see you arguing in your briefs, I don't see how we could possibly distinguish these claims from dealer tracker and mortgage grader. Would you acquiesce in that and say this case really does hinge on the difference being the simultaneous competition? That's what you argue in your brief. With the understanding that you've got to look at the claim as a whole. I think that if you take out that simultaneous competition from all of the other aspects, I think it's possible... It's certainly more abstract. And you eliminate the new inventive aspect. In other words, it is true that transferring data over a computer is known. It is true that getting offers back from a lending institution is known. But when you put them together the same way that in Deere, those elements were put together, you created something new. And here, literally, we created... LendingTree created an entire new industry. One question with respect to the claims instruction. Both patents set forth that there are several embodiments that are covered here. What I'd like to point the court to, it's in our brief, but the specific embodiment that we're looking at with respect to this argument that an application or the social security number must be transmitted in the first instance to the lender is not accurate for all the embodiments. If we turn to in the 816 patent at A531, and we go to column three, line 30 through 33, it talks about the lender accepts the application. Then in stage nine, the borrower can reply stating whether he accepts or denies the lender's application. So that's where he's accepting. Okay. When you go to... Your time is way past over. But I think Judge Schall would like to know... Yes, Mr. Henn. Were you able to discover a precise location where we could find that all the claims are covered by the JML? We have it 2007. First of all, am I correct in understanding that the 2007... Why don't you come over for a second? You both be there for this to see if there's any disagreement. You both be there if there's any questions. Stay up there, Mr. Kreninski. At 2007, it appears you're moving for invalidity of the listed claims there, correct? Yes. Okay, why do you let her come up? You just sit down. You come up here. I don't want you here anymore. Go. What's your name? Sayina Shamalov. Ms. Shamalov. Okay, you're now appearing... Are you a member of our bar? I am. There you go. You're now appearing before your client. Go ahead. Thank you. Okay. At 2007, are those listed claims, the one that you're claiming are invalid under 101? Well, that was... The 2007, that was part of the summary judgment motion. Post-trial, there were... Because the claims got rejiggered at trial, when we renewed our... And the court never ruled on the summary judgment motion and sat on it until then. We've renewed the request to find both patents invalid. And the court at A11346, at 4437... Wait a minute, wait a minute. Sorry. 11346 at 4437 lines three through six. Wait a minute, 11346. It was an oral ruling, 4437 lines three through six. And I can read the language. Yeah, we have that. What claims are we talking about? That is all the claims, the way the proceeding was... That was all the claims that were issued at trial. And what claims are those? That included claim 24. That's because that's what... It's a subset of the original claim, the summary judgment motion. But where do we have a list? So, what were all of the claims that were listed at trial? Are they at page 11 of the red brief? Yes, yes, your honor, that's correct. Mr. Korniski, is there any dispute that what's listed at page 11 of the red brief was what the claims were at trial? Give us a moment to cross-reference that. Page 11, and we can have the verdict form in here. Yes, your honor, the verdict form is A7251. That lists out each claim that was listed. Okay, 7251. Because the only claim that we're really concerned about is claim 24, so 7251. And your honor, that is the exact same list that's on page 11 of the red brief. But when the court says at 11-346 that he went back and looked at the pleadings again, he's talking about the summary judgment, right? Yes, but in the context of what we were asking him to do was for the claims that were at issue at trial. And his sentence there where he says the court finds as a matter of law, he says that that sentence is related as to the claims as he construed them. So that's covered. Our understanding was always that it was related to the claims that were actually at issue at trial that included claim 24 that was not at issue at the time of the summary judgment. I know it's a little confusing, and it's hard to track paper to control. Okay, I understand. I thank both counsel, I thank all counsel for their argument. The case is taken under submission. Thank you. Thank you.